**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| DR. ROGER C.S. LIN, *et al.*,<br>        Plaintiffs<br><br>        v.<br><br>UNITED STATES OF AMERICA<br>        and<br>REPUBLIC OF CHINA (TAIWAN),<br>        Defendants. |

Civil Action No. 15-cv-00295 (CKK)

**MEMORANDUM OPINION**
(March 31, 2016)

Plaintiffs are residents of Taiwan and members of an advocacy group in Taiwan who allege that in 1946, the Republic of China—at that time recognized by the United States as the government of China—unlawfully denied the population of Taiwan of its Japanese nationality at the conclusion of World War II.  Specifically, Plaintiff allege that the Republic of China issued nationality decrees that unlawfully denied those residing on Taiwan, as well as their descendants, of their Japanese nationality.  Plaintiff further allege that the United States shares legal responsibility for the denial of Plaintiffs' Japanese nationality because the Republic of China, through Generalissimo Chiang Kai-shek, was "acting as an agent of the United States" when the decrees were issued in 1946.  Plaintiffs filed suit against Defendants, the United States and the Republic of China (Taiwan), seeking relief in the form of (1) a declaration that the nationality decrees of 1946 violated international law and (2) an award for monetary damages for the tort of arbitrary denationalization.

Presently before the Court are Defendant United States' [23] Motion to Dismiss and Defendant Republic of China's [24] Motion to Dismiss, both pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6).  Upon consideration of the pleadings,[1] the relevant legal

authorities, and the record as a whole, the Court finds that the Court lacks subject matter

jurisdiction over Plaintiffs' claims with respect to both Defendants.  Accordingly, the Court shall

GRANT Defendant United States' [23] Motion to Dismiss, and the Court shall GRANT

Defendant Republic of China's [24] Motion to Dismiss.

## I. BACKGROUND

For the purposes of the motions before the Court, the Court accepts as true the well-

pleaded allegations in Plaintiffs' Amended Complaint.  The Court does "not accept as true,

however, the plaintiff's legal conclusions or inferences that are unsupported by the facts

alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).  The

Court recites the principal facts pertaining to the issues raised in the pending motions, reserving

further presentation of the facts for the discussion of the individual issues below.

Plaintiffs' Amended Complaint provides a "short history lesson" concerning the political

status of Taiwan over the last 120 years.[2]  In 1895, at the conclusion of the Sino-Japanese War,

---

[1] The Court's consideration has focused on the following documents:  Plaintiffs' Amended Complaint ("Pls.' Am. Compl."), ECF No. [18]; Defendant United States' Motion to Dismiss ("USA's Mot."), ECF No. [23]; Defendant Republic of China's Motion to Dismiss ("ROC's Mot."), ECF No. [24]; Plaintiffs' Opposition to Defendant United States' Motion to Dismiss ("Pls.' Opp'n to USA's Mot."), ECF No. [25]; Plaintiffs' Opposition to Defendant Republic of China's Motion to Dismiss ("Pls.' Opp'n to USA's Mot."), ECF No. [26]; Defendant United States' Reply in Support of Motion to Dismiss ("USA's Reply"), ECF No. [29]; and Defendant Republic of China's Reply in Support of Motion to Dismiss ("ROC's Reply"), ECF No. [30].

[2] The instant case marks Plaintiff Dr. Roger C.S. Lin's second attempt to obtain a declaratory judgment from this District Court concerning the nationality of Dr. Lin and other Taiwan residents.  *See Lin v. United States*, 539 F. Supp. 2d 173 (D.D.C. 2008) *aff'd* 561 F.3d 502 (2009) (dismissing plaintiffs' claims because they were barred by the political question doctrine).  Plaintiffs' instant Amended Complaint contains factual allegations that substantially mirror the factual allegations made in the amended complaint in the first *Lin* case.  For a comprehensive recitation of the background facts, see Judge Rosemary M. Collyer's decision in the first *Lin* case.  *See Lin*, 539 F. Supp. at 174-77.

China and Japan signed the Treaty of Shimonoseki, pursuant to which, China ceded Taiwan (then known as Formosa) to Japan in "perpetuity and full sovereignty."  Am. Compl. ¶¶ 28-31.  On December 7, 1941, Japan attacked the United States naval base at Pearl Harbor, Hawaii, and as a result the United States Congress issued a Declaration of War on December 8.  *Id.* ¶¶ 33-34.  After four years of war, Japan surrendered on September 2, 1945.  *Id.* ¶ 34.  On that same day, General Douglas MacArthur, Supreme Commander for the Allied Powers, issued General Order No. 1, ordering the "senior Japanese commanders and all ground, sea, air, and auxiliary forces within . . . Formosa" to "surrender to Generalissimo Chiang Kai-shek."  *Id.* ¶ 35.

According to the Amended Complaint, Chiang Kai-shek was the leader of the Chinese Nationalist Party of the Republic of China and was the "representative of the Allied Powers empowered to accept surrender[]" of the Japanese forces in Taiwan.  *Id.*  On October 25, 1945, Chiang Kai-shek's representative in Taiwan accepted the surrender of the Japanese forces there, although "[t]he surrender of Japanese forces in Taiwan (Formosa) was assisted by the United States Armed Forces."  *Id.*  Plaintiffs allege that in the aftermath of Japan's surrender, Chiang Kai-shek and his Chinese Nationalist Party administered Taiwan on behalf of the Allied Powers, such that the Republic of China acted as "the agent of the United States."  *Id.* ¶ 45.[3]

On January 12, 1946, the Republic of China issued a decree mandating, effective December 25, 1945, the automatic restoration of Chinese nationality for the people of Taiwan. *Id.* ¶ 37.  The decree stated:

_____

[3] As stated in the Amended Complaint, in 1949, Taiwan (Formosa) became the only home of the Chinese Nationalist Party.  In that same year, China's civil war between Chinese Nationalists and Communists ended with the establishment of the People's Republic of China and the ouster of the Chinese Nationalists from Mainland China.  The Chinese Nationalists, led by Chiang Kai-shek, remained in Taiwan, where, Plaintiffs allege, they continued to administer the island for the Allied Powers as the Republic of China.  *See* Am. Compl. ¶ 46.

> The people of Taiwan are people of our country. They lost their nationality
> because the island was invaded by an enemy. Now that the land has been
> recovered, the people who originally had the nationality of our country shall,
> effective December 25, 1945, resume the nationality of our country. This is
> announced by this general decree in addition to individual orders.

*Id*. Several months later, on June 22, 1946, the Republic of China issued a decree on Measures

Concerning the Nationality of Overseas Taiwanese (also translated as "Measures For The

Adjustment of Nationality of Taiwanese Abroad"). *Id*. ¶ 39. The measure provided that persons

living outside of Taiwan would likewise have Chinese nationality restored to them, and issued a

certificate of registration. *Id*.

Plaintiffs allege that "the United States did not give the Republic of China the appropriate

authority to issue the 1946 Nationality Decrees." *Id*. ¶ 41. Plaintiffs also allege that the United

States was "fully aware of these Decrees" and was also "aware . . . that the decree[s] violated

international law." *Id*. ¶ 41, 43.

On February 27, 2015, Plaintiffs filed suit against Defendants the United States and the

Republic of China. Plaintiffs seek a series of Court-ordered declarations holding that the

Republic of China's nationality decrees are legally invalid under various international

instruments, and that the United States did not authorize the Republic of China to issue those

decrees. *See id.*, Prayer for Relief, ¶ 1. Plaintiffs also seek an award for monetary damages

against the Republic of China for the tort of arbitrary denationalization. *See id.*, Prayer for

Relief, ¶ 2. Both Defendants have filed Motions to Dismiss Plaintiffs' Amended Complaint,

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and can adjudicate only those cases or

controversies entrusted to them by the Constitution or an Act of Congress. *Kokkonen v.*

4

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377.  "In an attempt to give meaning to Article III's case-or-controversy requirement, the courts have developed a series of principles termed 'justiciability doctrines,' among which are standing . . . and the political question doctrine." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  These doctrines incorporate both the prudential elements, which " 'Congress is free to override,' " *id.* (quoting *Fair Employment Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1278 (D.C. Cir. 1994)), and " 'core component[s]' " which are " 'essential and unchanging part[s] of the case-or-controversy requirement of Article III,' " *id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The Court begins with the presumption that it does not have subject matter jurisdiction over a case.  *Id.*  To survive a motion to dismiss pursuant to Rule 12(b)(1), a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claim.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

## III. DISCUSSION

In moving to dismiss, the two Defendants have each put forward a plethora of arguments as to why this Court should dismiss Plaintiffs' case for lack of subject matter jurisdiction. Specifically, both Defendants argue that this Court lacks jurisdiction over Plaintiffs' claims because (1) Plaintiffs do not have standing under Article III of the United States Constitution and (2) Plaintiffs' request that declarations be issued concerning the nationality status of residents of Taiwan presents a "quintessential non-justiciable political question."  In addition, Defendant Republic of China argues that the Court lacks jurisdiction over Plaintiffs' claims against the Republic of China under the Foreign Sovereign Immunities Act.

Upon review of the parties' submissions, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' case.  Accordingly, the Court shall not consider Defendants' remaining arguments, which concern the merits of Plaintiffs' claims, namely, whether Plaintiffs fail to state a cause of action and whether the applicable statutes of limitations bar Plaintiffs' claims.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  The Court shall limit its discussion to the threshold jurisdictional issues that bar adjudication of this matter.  *See Anderson v. Carter*, 802 F.3d 4, 10 (D.C. Cir. 2015) ("While the Supreme Court in *Steel Co.* makes clear that once we have established that we have no subject-matter jurisdiction, we can proceed no further, we do not violate this admonition when we observe that more than one threshold basis bars adjudication.").

### A. Plaintiffs lack standing under Article III of the United States Constitution.

Pursuant to Article III of the Constitution, Defendants move to dismiss this action on the basis that this Court has no jurisdiction because Plaintiffs lack standing.  "Article III of the Constitution limits the jurisdiction of federal courts to 'actual cases or controversies between

proper litigants.' " *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996)).  Because standing is a "threshold jurisdictional requirement," a court may not assume that Plaintiff has standing in order to proceed to evaluate a case on the merits.  *Bauer v. Marmara*, 774 F.3d 1026, 1031 (D.C. Cir. 2014).  A plaintiff "bears the burden of showing that he has standing for each type of relief sought."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  "To establish constitutional standing, plaintiffs 'must have suffered or be imminently threatened with a concrete and particularized injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.' " *Mendoza*, 754 F.3d at 1010 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ─── U.S. ───, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014); s*ee also Lujan*, 504 U.S. at 560.

"The 'irreducible constitutional minimum of standing contains three elements':  injury in fact, causation, and redressability." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S.at 560-61).  "Injury in fact is the 'invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560) (alterations in original).  "The 'causal connection between the injury and the conduct complained of' must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.' " Id. (quoting *Lujan*, 504 U.S. at 561).   Finally, "it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.' " *Id.* (quoting *Lujan*, 504 U.S. at 561).

Defendant United States challenges standing with respect to all three prongs, while Defendant Republic of China challenges standing only with respect to prong #1, the injury-in-fact requirement, and prong #3, the redressability requirement.

     1.   <u>Plaintiffs have alleged an "injury-in-fact."</u>

To constitute an "injury-in-fact" under Article III, an injury must be "particularized," which means that "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Defendants argue that Plaintiffs "have not alleged facts showing that they have suffered a *personal* injury as a result of the 1946 nationality decrees." *See* USA's Mot. at 17 (emphasis in original).[4]  Defendants characterize Plaintiffs' alleged injury merely as a "general interest in obtaining a different international status for Taiwan and defining Taiwan's identity." *Id.* Defendants contend that Plaintiffs' allegations present the type of "abstract question of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches. *See id.* at 18 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982)).

Plaintiffs argue that their injury is "separate and apart from questions of Taiwan's unresolved political status" and that Plaintiffs' "daily experiences facing statelessness are neither abstract nor general."  Pls.' Opp'n to USA's Mot. at 33.  Relying on the Supreme Court's decision in *Baker v. Carr*, 369 U.S. 186 (1962), Plaintiffs argue that that the requirement that their injury be "personal, individualized, and peculiar to himself" does not mean that they must allege injuries that affect only them, or that there is an upper limit on the number of people that

---

[4]  Defendant Republic of China adopts Defendant United States' arguments with respect to the injury-in-fact requirement.  *See* ROC's Mot. at 12.

may be injured by a defendant's acts beyond which there is no standing.  Pls.' Opp'n to USA's

Mot. at 34.

The Court agrees with Plaintiffs and finds that they have alleged a "particularized" injury

that affects them in a "personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.  Plaintiffs'

allegations go beyond having a "general interest in obtaining a different international status for

Taiwain."  USA's Mot. at 17.  Rather, Plaintiffs allege that they have been injured by virtue of

having been "stripped of their Japanese nationality" and having been "impos[ed] a nationality of

the ROC."  Am. Compl. ¶ 8.  Such an injury is not a mere "generalized grievance about the

conduct of government or the allocation of power."  *Valley Forge Christian Coll.*, 454 U.S. at

480 (finding that plaintiff taxpayers did not have standing as taxpayers to challenge transfer of

federally owned property).  Accordingly, the Court finds that Plaintiffs have alleged "facts

showing disadvantage to themselves as individuals," so as to demonstrate that they have "such a

personal stake in the outcome of the controversy as to assure [] concrete adverseness."  *Baker*,

369 U.S. at 205, 206.

2. <u>Plaintiffs cannot met their burden of showing that their alleged injury is fairly</u>
<u>traceable to the United States.</u>[5]

In order for Plaintiffs to have standing, they must demonstrate that their alleged injury is

"fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the

independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560 (quoting

*Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).  To satisfy this

"causation" or "traceability" prong, Plaintiffs must show that "it is substantially probable that the

---

[5] Defendant Republic of China concedes that Plaintiffs have met this element of standing with respect to Defendant Republic of China.  *See* ROC's Mot. at 12.

challenged acts of the defendant, not an absent third party, [] cause[d] the particularized injury of the plaintiffs." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996).

Defendant United States contends that Plaintiffs cannot establish that the United States caused their nationality injury through the 1946 decrees because the United States did not issue those decrees. USA's Mot. at 19. Defendant United States cites Plaintiffs' own allegation in their Amended Complaint: "the United States did not give the ROC the appropriate authority to issue the 1946 Nationality Decrees." *Id.* (quoting Am. Compl. ¶ 41). Defendant United States also argues that Plaintiffs cannot establish causation by alleging that the Republic of China was "acting as an agent of the United States" when it promulgated the nationality decrees in 1946. *Id.* (citing Am. Compl. ¶ 6). Defendant United States further argues that, accepting *arguendo* that such an agency relationship existed in 1946, "almost seven decades have passed since then, with numerous events having occurred that are more directly relevant to Taiwan's political status," and that it would be "completely speculative to conclude that the nationality of Taiwan residents was caused by decrees issued by the Republic of China in 1946." *Id.* at 19-20 (listing intervening events).

In response, Plaintiffs repeat their allegation that the United States is liable for the challenged acts of its alleged agent, the Republic of China. Pls.' Opp'n to USA's Mot. at 36 (citing Restatement (Third) of Agency (2006) § 7.03(1)). Plaintiffs also cite allegations in their Amended Complaint, which they believe establish the principal-agent relationship between the United States and the Republic of China. *See id.* Plaintiffs also argue that "the fact that Plaintiffs' statelessness has been allowed to exist for nearly 70 years should not be held against the Plaintiffs." *See id.* at 37.

At the outset, the Court notes that this is not the first time that Plaintiffs have brought claims against the United States based on their assertion that the Republic of China acted as an agent for the United States during the relevant post-World-War II time period.  In *Lin v. United States*, 539 F. Supp. 2d 173 (D.D.C. 2008), Plaintiff Dr. Roger C.S. Lin—who is also a plaintiff in this lawsuit—and a group of Taiwan residents claimed that "General Order No. 1 made Chiang Kai-shek an agent for the principal Occupying Power, *i.e.*, the United States," and that the asserted principal-agent relationship enabled the United States to exercise temporary sovereignty over Taiwan.  *Id.* at 178, 180.  In that case, Judge Rosemary M. Collyer held that the court could not examine the bases for Plaintiffs' claims because doing so would require the court to resolve non-justiciable political questions, such as whether the United States exercised sovereign authority over Taiwan.  *See id.* at 178-181.  The United States Court of Appeals for the District of Columbia Circuit affirmed Judge Collyer's decision to dismiss the plaintiffs' claims, finding that the plaintiffs were asking the court to "trespass into a controversial area of U.S. foreign policy in order to resolve a question the Executive Branch intentionally left unanswered for over sixty years:  who exercises sovereignty over Taiwan."  *Lin v. United States*, 561 F.3d 502, 503-04 (D.C. Cir. 2009).

Similarly here, Plaintiffs are asking the Court to conclude that a principal-agency relationship existed between the United States and the Republic of China, and that through the asserted principal-agent relationship, the United States has caused Plaintiffs' alleged injuries, namely the deprivation of Plaintiffs' recognized nationality.  As the Court discusses in greater detail below in Part III.B, the Court cannot issue such a finding without addressing the complex and delicate contours of certain non-justiciable political questions, including whether the United

States exhibited sovereign control over Taiwan during the time period at issue.  *See infra*, Part III.B.

Without addressing any such non-justiciable political questions, the Court notes several readily apparent deficiencies in Plaintiffs' allegations that the Court deems problematic in proving that Defendant United States has caused Plaintiffs' alleged injuries.  First, Plaintiffs concede in their Amended Complaint that "the United States did not give the ROC the appropriate authority to issue the 1946 Nationality Decrees."  Am. Compl. ¶ 41.  Plaintiffs, citing relevant State Department documents, allege that the United States was merely "aware" of the Decrees.  *Id.* ¶¶ 41, 43.  As Defendant United States observes in its Motion to Dismiss, if "by Plaintiffs' own allegations, the United States did not authorize the Republic of China to issue the nationality decrees in 1946, then any alleged injury arising from the decrees cannot be 'fairly traceable' to the United States."  USA's Mot. at 19.[6]

---

[6] Plaintiffs misleadingly cite two inapposite out-of-circuit cases to argue the proposition that where "the United States is sufficiently involved in the activity in the activity of foreign officials, the United States may be responsible for the acts of those officials as agents of the United States."  Pls.' Opp'n to USA's Mot. at 36.  The first case, *United States v. Hensel*, 699 F.2d 18, 25 (1st Cir. 1983), cert. denied, 461 U.S. 958 (1983), concerns whether the "exclusionary rule" under the Fourth Amendment applied to a search conducted by Canadian law enforcement of evidence seized by foreign police agents, after an American DEA agent urged the Canadians to seize the ship if it entered Canadian waters.  *See id.*  The second case, *Stonehill v. United States* 405 F.2d 738, 743 (9th Cir. 1968), cert. denied, 395 U.S. 960 (1969), also concerned the "exclusionary rule," specifically, the legality of certain raids found to have been illegal searches and seizures by the Philippine Supreme Court as violating a section of the Philippine Constitution that was identical to the Fourth Amendment of the United States Constitution.  *See id.*  Neither cited decision provides any support for Plaintiffs' contention that United States is responsible for Plaintiffs' injuries that allegedly have resulted from the issuing of the 1946 nationality decrees.

Likewise, Plaintiffs' reliance on *Cobb v. United States*, 191 F.2d 604 (1951) is misplaced.  *Cobb* concerned whether the military occupation of Okinawa rendered the occupied territory part of the United States for purposes of the Federal Tort Claims Act and did not address the principles of agency law on which Plaintiffs rely.  *See id.* at 610-611.

Furthermore, Plaintiffs repeatedly allege in their Amended Complaint that Chiang Kai-shek acted as a representative of the *Allied Powers*. *See* Am. Compl. ¶¶ 1, 18, 36, 46, 57. Plaintiffs' assertion that Chiang Kai-shek acted as an agent of the United States appears to be part of an attempt by Plaintiffs to benignly conflate the Allied Powers and the United States into one. However, such an attempt appears problematic, given Plaintiffs' concession that the "Allied Powers," as defined in Article 23(a) of the Treaty of Peace with Japan, included "Australia, Australia, Canada, Ceylon, France, Indonesia, the Kingdom of the Netherlands, New Zealand, Pakistan, the Republic of the Philippines, the United Kingdom of Great Britain and Northern Ireland, and the United States of America." Am. Compl. ¶ 70, n.57.

Finally, Plaintiffs are asking the Court to conclude that Defendant United States—by virtue of its alleged principal-agent relationship with the Republic of China in 1946—has caused Plaintiffs' present-day injuries as stateless persons deprived of their Japanese nationality. *See* Am. Compl. ¶¶ 6, 8. However, even if one were to accept, *arguendo*, that such an agency relationship existed in 1946, seven decades have passed since the issuing of the nationality decrees in 1946, with numerous events having occurred that are directly relevant to Taiwan's political status. *See* U.S.A.'s Mot. at 19, Ex. 2. Furthermore, Plaintiffs have not put forward any evidence demonstrating that Plaintiffs' current situation is a result of the events in 1946 and not a consequence of the "years and years of diplomatic negotiations and delicate agreements" that have occurred during the intervening years. *Lin I*, 539 F. Supp. 2d at 181. Given the lapse of time and the numerous intervening events involving a number of nonparty sovereign nations, it would be speculative to conclude, based on the record currently before the Court, that Plaintiffs' current injuries were caused by the decrees issued by the Republic of China in 1946.

Accordingly, the Court cannot find that Plaintiffs have met their burden of demonstrating the second element required for Article III standing, *i.e.*, that "it is substantially probable" that

the challenged actions by Defendant United States have caused Plaintiffs' alleged injuries.  *Fla.*

*Audubon Soc'y*, 94 F.3d at 663.

   3.   Plaintiffs' alleged injuries are not redressable by a favorable decision of this
        Court.

   In order for Plaintiffs to have standing, Plaintiffs must also demonstrate that it is "likely,

as opposed to merely speculative that the injury will be redressed by a favorable decision" of this

Court.  *Lujan*, 504 U.S. at 561 (internal quotations and citation omitted).  "Relief that does not

remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence

of the redressability requirement."  *Steel Co.*, 523 U.S. at 107.

   Plaintiffs request that the Court redress their alleged injuries—the deprivation of their

Japanese nationality and their current stateless status—by entering a series of declarations

holding that the nationality decrees issued in 1946 are legally invalid under various international

instruments, and that the United States did not authorize the Republic of China to issue those

decrees.  *See* Am. Compl., Prayer for Relief, ¶ 1.

   Defendants argue that no declaratory judgment can restore Plaintiffs' alleged Japanese

nationality, and that the Court lacks authority to resolve Plaintiffs' nationality.  Defendants

further argue that Plaintiffs' nationality status cannot be resolved without first resolving the

political status of Taiwan, the resolution of which the United States has long favored through a

"peaceful settlement . . . by the Chinese themselves."  *See* USA's Mot. at 21.[7]  According to

Defendants, resolving the political status of Taiwan involves "independent actors not before the

court and whose exercise of broad and legitimate discretion the courts cannot presume either to

---

[7]  Defendant Republic of China adopts Defendant United States' arguments with respect to the
injury-in-fact requirement.  *See* ROC's Mot. at 12.

control or to predict." *See id.* (quoting *Lujan*, 504 U.S. at 562 (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (internal quotations omitted))).

Plaintiffs assert that this Court can redress Plaintiffs' injuries.  Specifically, Plaintiffs contend that Plaintiffs' action "seeks a declaration by this Court that is substantially likely to support and materially change the Plaintiffs' ability to clarify their nationality status."  Pls.' Opp'n to USA's Mot. at 38.  Plaintiffs assert that they do not claim to be Japanese nationals, but rather claim to be stateless persons, whose statelessness began with the illegal deprivation of their, and their descendants', Japanese nationality."  *Id.* at 38-39.  Plaintiffs argue that the declaration that Plaintiffs seek would "support the Plaintiffs' position in securing an answer, any answer, to the question of their nationality" and would "significantly support the Plaintiffs' efforts in Taiwan and around the world, and within international bodies such as the United Nations, to end their statelessness."  *Id.* at 39.

Upon review of the parties' submissions, the Court finds that this Court cannot redress Plaintiffs' alleged injuries.  "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff."  *Fla. Audubon Soc'y*, 94 F.3d at 661.  Here, the relief sought by Plaintiffs—a declaration stating that the Republic of China's nationality decrees are legally invalid—would not redress their alleged injury as "stateless persons" who lack an internationally recognized nationality.  In fact, Plaintiffs do not even attempt to argue that the declaration that Plaintiffs are seeking would provide them with an internationally recognized nationality or directly affect their nationality status.  *See* Pls.' Opp'n to USA's Mot. at 38-39.  Rather, Plaintiffs merely contend that the sought declaration, if issued by the Court, would "significantly support the Plaintiffs' efforts in Taiwan and around the world, and within international bodies such as the United Nations, to end

their statelessness." *Id.* at 39.  However, redressability cannot rest on speculation concerning the

discretionary actions that non-parties may take in the future.  *See Univ. Med. Ctr. Of S. Nev. v.*

*Shalala*, 173 F.3d 438, 442 (D.C. Cir. 1999) (stating that even if the plaintiff prevailed, "it has

never explained how, or under what legal theory, it would be entitled to recover" against non-

parties).

Furthermore, when "redress depends on the cooperation of a third party, it becomes the

burden of the [plaintiff] to adduce facts showing that those choices have been or will be made in

such manner as to produce causation and permit redressability of injury." *U.S. Ecology, Inc. v.*

*U.S. Dep't of Interior*, 231 F.3d 20, 24-25 (D.C. Cir. 2000) (citation omitted).  Here, Plaintiffs

allege no facts plausibly demonstrating how the sought declaration, if issued by this Court,

would be used "within international bodies such as the United Nations [] to end their

statelessness."  Pls.' Opp'n to USA's Mot. at 39.  As such, the resolution of Plaintiffs' alleged

injury necessarily involves "independent actors not before the court and whose exercise of broad

and legitimate discretion the courts cannot presume either to control or to predict." *Lujan* 504

U.S. at 562 (citation omitted).

In sum, Plaintiffs have failed to show that it is "likely, as opposed to merely speculative"

that their injury will be redressed by a favorable decision of this Court.  *Lujan*, 504 U.S. at 561.

Accordingly, the Court finds that Plaintiffs lack standing to bring the present suit, and that this

Court lacks subject matter jurisdiction to hear Plaintiffs' claims against Defendants.

**B. Additional grounds as to why this Court lacks subject matter jurisdiction over
Plaintiffs' claims.**

When a court concludes that it lacks subject matter jurisdiction over a plaintiff's claims,

the Court is prohibited from addressing the merits of those claims.  *See Steel Co.*, 523 U.S. at

104-05.  A court does not violate that admonition when the court "observes that more than one

threshold basis bars adjudication," and proceeds to explain why such threshold jurisdictional issues provide additional grounds for why the court lacks jurisdiction to hear the plaintiff's case. *Anderson*, 802 F.3d at 10 (citing *Public Citizen v. United States District Court*, 486 F.3d 1342, 1346 (D.C. Cir. 2007)).

Here, Plaintiffs' request that a declaration be issued concerning the nationality status of Taiwan residents presents a "quintessential non-justiciable political question."  In addition, Plaintiffs fail to show that this Court has jurisdiction over Plaintiffs' claims against Defendant Republic of China under the FSIA.

### 1.   The political question doctrine bars adjudication of Plaintiffs' claims.

"The principle that the courts lack jurisdiction over political questions that are by their nature 'committed to the political branches to the exclusion of the judiciary' is as old as the fundamental principle of judicial review." *Schneider v. Kissinger,* 412 F.3d 190, 193 (D.C. Cir. 2005) (quoting *Antolok v. United States,* 873 F.2d 369, 379 (D.C. Cir. 1989)).  In determining whether a case presents a nonjusticiable political question, the courts look for six factors:  (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department;  (2) a lack of judicially discoverable and manageable standards for resolving it;  (3) the impossibility of deciding without an initial policy determination of a kind clearly for non-judicial discretion;  (4) the impossibility of a court's undertaking independent resolution without expressing a lack of respect due coordinate branches of government;  (5) an unusual need for unquestioning adherence to a political decision already made;  or (6) the potentiality of embarrassment of multifarious pronouncements by various departments on one question.  *Baker v. Carr,* 369 U.S. 186, 217 (1962).  If any one of these factors is present, the Court may find that the political question doctrine bars adjudication of Plaintiffs' claims.  *Schneider,* 412 F.3d at 194.

Here, Plaintiffs ask this Court to address broad questions about the nationality of Taiwan residents under various international instruments and to issue declarations regarding their nationality. *See* Am. Compl. ¶¶ 5, 6, 8, 9, 13, 45, 53, 50, 77; *id.*, Prayer for Relief, ¶ 1. Under settled D.C. Circuit precedent, however, the nationality of Taiwan residents presents a quintessential non-justiciable political question.

In *Lin v. United States*, 539 F. Supp. 2d 173 (D.D.C. 2008), the plaintiffs, which included the named Plaintiff in this case—Dr. Roger C.S. Lin—sought a judicial declaration that they are nationals of the United States with all related rights and privileges, including the right to obtain U.S. passports. *Id.* at 176-77. As noted above, Judge Collyer granted the government's motion to dismiss, concluding that the plaintiffs' challenge involved "a quintessential political question" that required "trespass into the extremely delicate relationship between and among the United States, Taiwan and China." *Id.* at 178. Judge Collyer also noted that the plaintiffs were asking the court to "catapult over" a decision by the political branches to "obviously and intentionally *not* recognize[] any power as sovereign over Taiwan." *Id.* at 179 (emphasis in original). Given the "years and years of diplomatic negotiations and delicate agreements" between the United States and China, the court concluded it "would be foolhardy for a judge to believe that she had the jurisdiction to make a policy choice on the sovereignty of Taiwan." *Id.* at 181.

The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") affirmed Judge Collyer's decision, holding that the plaintiffs' request to be declared nationals of the United States was barred by the political question doctrine. *See Lin v. United States*, 561 F.3d 502, 508 (D.C. Cir. 2009). The D.C. Circuit explained that addressing plaintiffs' attempt to be declared U.S. nationals "would require us to trespass into a controversial area of U.S. foreign

policy in order to resolve a question the Executive Branch intentionally left unanswered for over sixty years:  who exercises sovereignty over Taiwan.  This we cannot do."  *Id.* at 503-04.

Here, as in the earlier case, Plaintiffs ask the Court to issue declarations that directly address the nationality of Taiwan's residents.  *See* Am. Compl. Prayer for Relief, ¶ 1.  However, as noted above, the D.C. Circuit has explicitly held that determining the nationality of Taiwan's residents would require this Court to resolve political questions that this Court does not have jurisdiction to resolve.  *See Lin*, 561 F.3d at 504.  Furthermore, resolving Plaintiffs' claims regarding their nationality status would first require answering the "antecedent question" of identifying Taiwan's sovereign, an issue that cannot be answered under the political question doctrine.  *Id.* at 506.

Plaintiffs argue, to no avail, that the declarations sought by Plaintiffs "do not touch upon the political status or sovereignty of Taiwan."  Pls.' Opp'n to USA's Mot. at 42.  Plaintiffs contend that they have identified a "specific and concrete violation of international law" that is unrelated to the current status of Taiwan, and that "the declarations sought by [Plaintiffs] would make no statement in any way on the current sovereignty status of Taiwan."  *See id.*  Plaintiffs' argument is essentially identical to the arguments rejected by the district court and the D.C. Circuit in the earlier *Lin* case.  *See Lin*, 539 F. Supp. 2d at 179 ("Plaintiffs argue that the Court need only perform a traditional judicial task, interpret treaties, laws, and the Constitution . . . but they misapprehend the nature of their own Amended Complaint."); *Lin*, 561 F.3d at 506 ("Appellants argue this is a straightforward question of treaty and statutory interpretation . . . Appellants insist they do not ask the court to determine Taiwan's sovereign; however, without knowing Appellants' status, we cannot delineate Appellants' resultant rights.").

Furthermore, Plaintiffs' arguments are fundamentally inconsistent with Plaintiffs' assertion that the declaratory judgment sought by Plaintiffs would redress Plaintiffs' injuries as stateless persons.  Plaintiffs assert that the sought declaration "would support the Plaintiffs' position in securing an answer, any answer to the question of their nationality" and that such a declaration would "significantly support the Plaintiffs' efforts in Taiwan and around the world, and within international bodies such as the United Nations, to end their statelessness." *Id.* at 39. In short, Plaintiffs argue that the sought declaration is both "unrelated to the current status of Taiwan" and sufficiently related to the current status that the sought declaration would be "substantially likely to support and materially change" the status of Taiwan.  *See id.*  Plaintiffs cannot have it both ways.

In light of the foregoing, the Court finds that Plaintiffs' claims are barred by the political question doctrine.

> 2. Plaintiffs fail to demonstrate that the Court has subject matter jurisdiction over the Republic of China under the Foreign Sovereign Immunities Act.

Under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611, "a foreign state is presumptively immune from the jurisdiction of United States courts," and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, (1993); *see also* 28 U.S.C. §§ 1604-1605.  The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  *Nelson,* 507 U.S. at 355, 113 S.Ct. 1471, quoting *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443 (1989) (internal quotation marks omitted).  Because "subject matter jurisdiction in any such action depends on the existence of one of the specified exceptions . . . [a]t the threshold of every action in a District Court against a foreign state . . . the court must satisfy itself that one of the exceptions applies."  *Verlinden B.V.*

*v. Cent. Bank of Nigeria,* 461 U.S. 480, 493–94 (1983).  "In other words, U.S. courts have no

power to hear a case brought against a foreign sovereign *unless* one of the exceptions applies."

*Diag Human S.E. v. Czech Republic-Ministry of Health*, 64 F. Supp. 3d 22, 30 (D.D.C. 2014).

Plaintiffs assert that this Court has subject matter jurisdiction over Plaintiffs' claims

against the Republic of China under the FSIA's non-commercial tort exception, 28 U.S.C.

§ 1605(a)(5).  *See* Pls.' Opp'n to ROC's Mot. at 18.  Plaintiffs allege that Defendant Republic of

China committed the tort of "arbitrary denationalization" when it promulgated the nationality

decrees in 1946.[8]

The non-commercial tort exception provides jurisdiction for cases alleging "personal

injury or death, or damage to or loss of property, occurring in the United States and caused by

the tortious act or omission of that foreign state or of any official or employee of that foreign

state while acting within the scope of his office or employment."  *Jerez v. Republic of Cuba*, 775

F.3d 419, 424 (D.C. Cir. 2014) cert. denied, 136 S. Ct. 38, 193 L. Ed. 2d 26 (2015) (quoting 28

U.S.C. § 1605(a)(5)).  "[B]oth the tort and the injury must occur in the United States."  *Id.*

(quoting *Persinger v. Islamic Republic of Iran,* 729 F.2d 835, 842 (D.C. Cir. 1984)).  "The entire

tort"—including not only the injury but also the act precipitating that injury—must occur in the

United States.  *Id.* (citing *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517,

---

[8] Only one federal case has recognized the tort of "arbitrary denationalization."  *See In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 252 (S.D.N.Y. 2009).  In that case, the court analyzed the tort of "arbitrary denationalization" in the context of the Alien Tort Statute, holding that a "state actor commits arbitrary denationalization if it terminates the nationality of a citizen either arbitrarily or on the basis of race, religion, ethnicity, gender, or political beliefs."  *Id.* Because the Court finds that the tortious activity at issue did not occur "within the United States" for the purposes of the FSIA's non-commercial tort exception, the Court finds it unnecessary to resolve Defendant Republic of China's contentions that the tort of "arbitrary denationalization" is not a tort recognized under the exception or that the Republic of China's decisions fall within the discretionary function exception under § 1605(a)(5)(A).

1525 (D.C. Cir. 1984)). "Congress' primary purpose in enacting § 1605(a)(5) was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law." *Amerada Hess,* 488 U.S. at 439-40.

The FSIA's term "United States" is narrowly construed to mean only "the continental United States and those islands that are part of the United States and its possessions," *Amerada Hess*, 488 U.S. at 440, and does *not* include territories over which the United States might exercise some form of jurisdiction. *See id.* at 440-41; *Persinger v. Islamic Rep. of Iran*, 729 F.2d 835, 839 (D.C. Cir. 1984). For example, the "high seas" fall outside the FSIA's definition of the "United States" even though the high seas might otherwise be within the United States' admiralty jurisdiction. *Amerada Hess*, 488 U.S. at 440-41. Similarly, a U.S. embassy in a foreign country does not constitute the "United States" for purposes of the FSIA because, even though the United States exercises certain forms of jurisdiction over its embassies, embassies are not within the continental United States and are not islands or possessions of the United States. *Persinger*, 729 F.2d at 839-842. *See also Perez v. The Bahamas*, 652 F.2d 186, 189 n.1 (D.C. Cir. 1981) (expressing doubt that a territory falling within the "Fishery Conservation Zone suffices as territory of the United States within the meaning of the FSIA" because it was clear that Congress intended the Fishery Conservation Management Act to extend U.S. jurisdiction only for limited maritime purposes).

Here, Plaintiffs argue that the tortious activity at issue occurred "within the United States" because when the nationality decrees were issued in 1946, Taiwan was "subject to complete American military occupation" and therefore should be considered "within the United States" for purposes of the FSIA's non-commercial tort exception. *See* Pls.' Opp'n to ROC's Mot. at 18. Plaintiffs' argument is unavailing and contrary to the established case law described above. The Supreme Court and the D.C. Circuit have definitely held that the FSIA's term, "United States," is narrowly construed to mean only "the continental United States and those

islands that are part of the United States and its possessions," *Amerada Hess*, 488 U.S. at 440,

and does *not* include territories over which the United States might exercise some form of

jurisdiction.  *See id.* at 440-41; *Persinger*, 729 F.2d at 839.[9]

Additionally, Plaintiffs allege that the United States was the "principal occupying power of

Taiwan," but they do not allege that the United States had any form of legal jurisdiction over Taiwan,

let alone jurisdiction as expressly defined as a U.N.-approved, congressionally ratified trusteeship.

*See* Am. Compl. ¶ 5.  In fact, Plaintiffs allege the opposite, that is, after World War II, the Allied

Powers turned over "the trusteeship of Formosa[10] to China" but that, "legalistically Formosa

[was] still a part of the Empire of Japan."  *Id.* ¶ 63 (quoting General MacArthur's testimony to a

congressional committee in 1951)).[11]

Furthermore, Plaintiffs have not alleged that the decisions regarding the 1946 nationality

decrees occurred *entirely* in Taiwan.  In briefing, Plaintiffs concede a point raised in Defendant's

motion, that is, in 1946, the Republic of China was actually operating its government out of

Nanjing—which is not part of mainland China, not Taiwan.  *See* ROC's Mot. at 5, ex. A; Pls.'

Opp'n to ROC's Mot. at 25.  Accordingly, even if Taiwan could have been considered "within

the United States" in 1946 for the purposes of the FSIA's tort exception, Plaintiffs have not

---

[9] Plaintiffs' reliance on *Cobb v. United States*, 191 F.2d 604 (9th Cir. 1951) is misplaced, as *Cobb* is inapposite to the facts and issues before the Court.  *Cobb* concerned whether the military occupation of Okinawa rendered the occupied territory part of the United States for purposes of the *Federal Tort Claims Act* and did not address the FSIA or the exception at issue in this case. *See id.* at 610-611.  Furthermore, to the extent that *Cobb* does have bearing on this case, *Cobb* actually cuts against Plaintiffs' argument, as the Ninth Circuit found that the United States' military occupation of Okinawa did not render the occupied territory part of the United States. *See id.* at 608-611.

[10] At the time, Taiwan was known as "Formosa."

[11] To the extent that Plaintiffs dispute Taiwan's legal status at the relevant time, Plaintiff would be asking the Court to resolve a political question that this Court may not adjudicate.  *See supra,* Part III.A.

shown that the "entire alleged tort" occurred "within the United States," as required by established case law.  *Jerez*, 775 F.3d at 424.

In sum, there simply is no basis for the Court to conclude that the tortious acts at issue occurred "within the United States" for purposes of the FSIA's non-commercial tort exception. Accordingly, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' claims against Defendant Republic of China.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that it lacks subject matter jurisdiction over this case.  Accordingly, the Court shall GRANT Defendant United States' [23] Motion to Dismiss, and the Court shall GRANT Defendant Republic of China's [24] Motion to Dismiss.

An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge